**C.A. No. 20-10371 & 21-10040**

D. Ct. No. CR-07-01207-RCC

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HOWARD WESLEY COTTERMAN,

Defendant-Appellant.

———————

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-----------------------------------------------------------
**BRIEF OF APPELLEE**
-----------------------------------------------------------

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief

SHELLEY K.G. CLEMENS
Assistant U.S. Attorney
405 W. Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Attorneys for Appellee

Date Electronically Filed: May 26, 2021

# I.  <u>TABLE OF CONTENTS</u>

Page

I.  Table of Contents.................................................................... i

II.  Table of Authorities ............................................................... ii

III.  Statement of Jurisdiction

    A.  District Court Jurisdiction ...............................................1

    B.  Appellate Court Jurisdiction............................................1

    C.  Timeliness of Appeal......................................................2

    D.  Bail Status......................................................................2

IV.  Issues Presented .....................................................................3

V.  Statement of the Case

    A.  Nature of the Case; Course of Proceedings.........................4

    B.  Statement of Facts .........................................................6

VI.  Summary of Arguments...........................................................13

VII.  Arguments

    A.  The District Court Did Not Abuse Its Discretion In Denying Defendant's Motion For Compassionate Release ...............15

    B.  The District Court Did Not Abuse Its Discretion By Denying Defendant's Motion For Reconsideration, His Request For An Evidentiary Hearing, Or His Request For A Psychological Evaluation.........................................................................41

    C.  The District Court Did Not Err By Finding Defendant's Pro Se Motions For Compassionate Release Were Moot..............52

VIII.  Conclusion ............................................................................55

IX.  Statement of Related Cases ....................................................56

X.  Certificate of Compliance.......................................................57

i

## II.  <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Chavez-Meza v. United States*,
   138 S.Ct. 1959 (2018) ................................................................ 19, 32

*Defenders of Wildlife v. Browner*,
   909 F. Supp. 1342 (D. Ariz. 1995) ......................................................44

*Dillon v. United States*,
   560 U.S. 817 (2010) ................................................................ 15, 50

*Estrada v. Scribner*,
   512 F.3d 1227 (9th Cir. 2008) ............................................................42

*Ferdik v. Bonzelet*,
   963 F.2d 1258 (9th Cir. 1992) ........................................................ 52, 53

*Hal Roach Studios v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ............................................................52

*Harris v. Haynes*,
   No. 3:19-CV-05698BHSJRC,
   2020 WL 4808656 (W.D. Wash. July 16, 2020),
   *report and recommendation adopted*, No. 3:19-CV-05698-BHS,
   2020 WL 4787989 (W.D. Wash. Aug. 18, 2020)................................................53

*Kona Enters, Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ............................................................44

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012) ............................................................52

*Nunes v. Ashcroft*,
   375 F.3d 805 (9th Cir. 2004)............................................................44

*Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*,
   771 F.3d 1211 (9th Cir. 2014) ............................................................52

*Rita v. United States*,
    551 U.S. 338 (2007) ......................................................................... 19, 32

*Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ................................................................44

*United States v. Ackerman*,
    No. CR 11-740-KSM-1,
    2020 WL 5017618 (E.D. Pa. Aug. 25, 2020) ........................................30

*United States v. Ameline*,
    409 F.3d 1073 (9th Cir.2005) ..............................................................23

*United States v. Aruda*,
    993 F.3d 797 (9th Cir. 2021) ......................................................... 15, 16

*United States v. Autery*,
    555 F.3d 864 (9th Cir. 2009) ...............................................................15

*United States v. Ayon-Nunez*,
    1:16-CR-00130-DAD,
    2020 WL 704785 (E.D. Cal. Feb. 12, 2020).........................................36

*United States v. Barreras*,
    CV 14-1030-PHX-DGC(BSB),
    CR 13-1655-PHX-DGC-1,
    2014 WL 2135943 (D. Ariz. May 22, 2014) ................................. 52, 53

*United States v. Castillo-Marin*,
    684 F.3d 914 (9th Cir. 2012) ...............................................................23

*United States v. Chambliss*,
    948 F.3d 691 (5th Cir. 2020) ...............................................................18

*United States v. Cotterman*,
    619 F. App'x 654 (9th Cir. 2015) .......................................... 5, 40, 41

*United States v. Cotterman*,
    637 F.3d 1068 (9th Cir. 2011) ...............................................................4

iii

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) ..................................................................4, 8

*United States v. Dean*,
  No. 3:18-cr-00119-SI,
  2020 WL 3073199 (D. Or. June 10, 2020) ..........................................16

*United States v. Ebbers*,
  432 F.Supp.3d 421 (S.D.N.Y. 2020) ....................................................19

*United States v. Eberhart*,
  448 F.Supp.3d 1086 (N.Cal. 2020)........................................................33

*United States v. Fischer*,
  No. CR-14-0595,
  2020 WL 2769986 (D. Md. May 27, 2020)..........................................22

*United States v. George*,
  85 F.3d 1433 (9th Cir. 1996) ................................................................42

*United States v. Gonzales*,
  502 F. App'x 665 (9th Cir. 2012) ..........................................................41

*United States v. Gonzalez*,
  819 F. App'x 283, 285 (5th Cir. Sept. 4, 2020)....................................52

*United States v. Gonzalez-Casteneda*,
  332 F. App'x 431 (9th Cir. 2009) ..........................................................41

*United States v. Hamilton*,
  715 F.3d 328 (11th Cir. 2013) ..............................................................18

*United States v. Irving*,
  554 F.3d 64 (2d Cir. 2009)....................................................................38

*United States v. Jenkins*,
  854 F.3d 181 (2d Cir. 2017)..................................................................39

*United States v. Jenkins*,
  No. 4:15-CR-3079,
  2020 WL 2814437 (D. Neb. May 26, 2020)........................................................30

*United States v. Jones*,
  836 F.3d 896 (8th Cir. 2016) ...............................................................................18

*United States v. Lebrecht*,
  1:16-cr-00166-EAW,
  2020 WL 2519721 (W.D.N.Y. May 18, 2020).....................................................30

*United States v. Ledezma-Rodriguez*,
  472 F.Supp.3d 498 (S.D. Iowa, July 14, 2020) ...................................................38

*United States v. Lii*,
  No. CR-06-143 JMS,
  2021 WL 1113663 (D.Ct. Hawaii, March 23, 2021)............................................37

*United States v. Limberopoulos*,
  26 F.3d 245 (1st Cir. 1994)..................................................................................42

*United States v. Lipsey*,
  No. CR-07-01208-1-PHX-GMS,
  2021 WL 1597899 (D. Ariz. April 23, 2021) ......................................................50

*United States v. Lopez-Cruz*,
  730 F.3d 803 (9th Cir. 2013) ...............................................................................45

*United States v. Mark*,
  795 F.3d 1102 (9th Cir. 2015) .............................................................................41

*United States v. McCoy*,
  981 F.3d 271 (4th Cir. 2020) ...............................................................................37

*United States v. Medina*,
  524 F.3d 974 (9th Cir. 2008) ...............................................................................26

*United States v. Mercado-Moreno*,
  869 F.3d 942 (9th Cir. 2017)...............................................................................42

v

*United States v. Mezas de Jesus*,
   217 F.3d 638 (9th Cir. 2000) ..................................................26

*United States v. Miezin*,
   456 F.Supp.3d 911 (N.D. Ohio Apr. 27, 2020) ....................30

*United States v. Morales*,
   108 F.3d 1031 (9th Cir. 1997) ...................................... 15, 26

*United States v. Mortensen*,
   822 F. App'x 634 (9th Cir. 2020) .........................................18

*United States v. Mortensen*,
   No. 2:11-CR-00095-JAD-CWH,
   2020 WL 2549970, (D. Nev. May 19, 2020).......................29

*United States v. Nickels*,
   324 F.3d 1250 (11th Cir. 2003) ...........................................42

*United States v. Raddatz*,
   447 U.S. 667 (1980)..............................................................45

*United States v. Raia*,
   954 F.3d 594 (3d Cir. 2020)..................................................32

*United States v. Ramirez*,
   459 F.Supp.3d 333 (D. Mass. 2020) ....................................33

*United States v. Robertson*,
   895 F.3d 1206 (9th Cir. 2018) .............................................15

*United States v. Rodriguez*,
   921 F.3d 1149 (9th Cir. 2019) .............................................23

*United States v. Romero–Rendon*,
   220 F.3d 1159 (9th Cir.2000) ..............................................23

*United States v. Smith*,
   No. 3:16-CR-48 (MPS),
   2020 WL 1903160 (D. Conn. Apr. 17, 2020).......................22

vi

*United States v. Sprague*,
  135 F.3d 1301 (9th Cir. 1998) .............................................................18

*United States v. Treadwell*,
  593 F.3d 990 (9th Cir. 2010) ..............................................................38

*United States v. Trujillo*,
  713 F.3d 1003 (9th Cir. 2013) .............................................................19

*United States v. Van Dyke*,
  2:15-CR-0025-JLQ-1,
  2020 WL 1811346 (E.D. Wash. Apr. 8, 2020),
  *adhered to on reconsideration*,
  2020 WL 1845553 (E.D. Wash. Apr. 10, 2020)..................................30

*United States v. Working*,
  224 F.3d 1093 (9th Cir. 2000) .............................................................35

*United States v. Yellow Cab Co.*,
  338 U.S. 338 (1949)............................................................................29

*Vega v. Nunez*,
  CV 13-09530-VBF-E,
  2014 WL 1873265 (C.D. Cal. May 8, 2014) ......................................52

*Walton v. Ariz.*,
  497 U.S. 639 (1990)............................................................................18

## **STATUTES**

18 U.S.C. § 1462(a) ................................................................................9

18 U.S.C. § 2251(a) ................................................................................9

18 U.S.C. § 2251(e) ................................................................................9

18 U.S.C. § 2252(a)(1)............................................................................9

18 U.S.C. § 2252(b)(1)............................................................................9

18 U.S.C. § 2252(b)(2) ............................................................9

18 U.S.C. § 2252(a)(4)(B) .......................................................9

18 U.S.C. § 3142(g) ...............................................................17

18 U.S.C. § 3231 ......................................................................1

18 U.S.C. § 3552(c) ...............................................................50

18 U.S.C. § 3553(a) ....................................................... *passim*

18 U.S.C. § 3582(a)(1)(A)(i) ................................................11

18 U.S.C. § 3582(c) ............................................ 3, 15, 18, 42, 50

18 U.S.C. § 3582(c)(1)(A) ............................................ *passim*

18 U.S.C. § 3582(c)(1)(A)(i) ..............................................1, 16

18 U.S.C. § 3582(c)(2) ...........................................................52

18 U.S.C. § 4241 ...................................................................42

18 U.S.C. § 4248 ...................................................................48

28 U.S.C. § 994(t) .................................................................16

28 U.S.C. § 1291 ......................................................................1

## **MISCELLANEOUS**

Bureau of Prisons Program Statement 5394.01, Certification and Civil Commitment of Sexually Dangerous Persons ......................................................48

U.S.S.G. § 1B1.13 ........................................................ 16, 17, 33, 36, 46

## **RULES**

Fed. R. App. P. 4(b) ................................................................................2

Fed. R. Crim. P. 11...............................................................................41

Fed. R. Crim P. 35................................................................................50

Fed. R. Crim. P. 43(b)(4) .....................................................................50

## III.  STATEMENT OF JURISDICTION

### A.    District Court Jurisdiction

The defendant-appellant, Howard Wesley Cotterman ("the defendant"), appeals the district court's order denying his motions for compassionate release and his motion for reconsideration.  The district court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3582(c)(1)(A)(i). (1-SER-2-11.)[1]

### B.    Appellate Court Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 based on the district court's entry of an order denying the defendant's motion for compassionate release on November 2, 2021 (1-SER-2-8), and the district court's entry of an order denying his motion for reconsideration on January 27, 2021 (1-SER-9-11 ).  Cases 20-10371 and 21-10040 have been consolidated for purposes of appeal.  (CA Case No. 20-10371, Doc. 7.)

---

[1] "CR" refers to the Clerk's Record, followed by the document number(s). "SER" refers to the Supplemental Excerpts of Record, preceded by the relevant volume number, and followed by the relevant page number(s). References to the defendant's Opening Brief are followed by the page number as docketed by the court clerk's office.  References to the presentence report (PSR) are followed by the appropriate paragraph or page numbers.   Pursuant to this Court's Order dated February 8, 2021, the government has included in its SERs all documents cited in the defendant's pro se opening brief or otherwise required by Rule 30-1.4. (CA Case No. 20-10371, Doc. 7.)  Pursuant to Ninth Circuit Rule 27-13(d), the government provided the PSR under seal via the Ninth Circuit Appellate ECF System at the time this brief was filed.

**C.**   **Timeliness of Appeal**

Following the entry of the order denying defendant's motion for compassionate release, the defendant filed a notice of appeal on November 10, 2020. (CR 206.)   The defendant filed a second notice of appeal on February 4, 2021, following the district court's order denying defendant's motion for reconsideration. (CR 212.)  The notices were timely pursuant to Fed. R. App. P. 4(b).

**D.**   **Bail Status**

The defendant is currently in custody, serving his sentence, and is expected to be released on January 23, 2038, according to the Bureau of Prisons.

# IV. <u>ISSUES PRESENTED</u>

A.     Whether the district court abused his discretion in denying defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) after finding that the 18 U.S.C. § 3553(a) sentencing factors did not warrant early release, and that the defendant failed to show extraordinary and compelling reasons justifying early release,  particularly given that the defendant has only served a little over one-third of his originally imposed sentence.

B.     Whether the district court abused his discretion in denying defendant's motion for reconsideration of the denial of his motion for compassionate release where the defendant did not produce newly discovered evidence that either contradicted the validity of the district court's original ruling or established that the court's prior ruling was clearly erroneous, and raised arguments that should have been raised in his original motion.

C.     Whether the district court erred by finding the defendant's pro se motions were moot, where defendant's attorney filed a supplemental motion for compassionate release that "amended and supplemented" defendant's pro se motions, and raised the same issues and arguments raised in the defendant's pro se motions.

## V.  <u>STATEMENT OF THE CASE</u>

### A.  <u>Nature of the Case; Course of Proceedings</u>

On June 27, 2007, a Tucson, Arizona grand jury returned an eight-count indictment charging the defendant with two counts of production of child pornography (counts 1 and 2); transportation and shipping of child pornography (count 3), receipt of child pornography (count 4), possession of child pornography (count 5); importation of obscene material (count 6); transportation of obscene material (count 7); and flight to avoid prosecution (count 8).  (2-SER-13-18.)

Significant portions of the evidence in this case were obtained through a search of the defendant's laptop computer that was seized at the Lukeville, Arizona Port of Entry (POE) at the U.S./Mexico border.  The defendant filed a motion to suppress evidence seized from his computer.  (CR 17.)  After hearing evidence and argument, the district court granted the defendant's motion to suppress.  (CR 71.) The government appealed.  (CR 72.)

On March 30, 2011, this Court reversed and remanded, holding that the district court erred in suppressing the evidence that was lawfully obtained during a border search.  *United States v. Cotterman*, 637 F.3d 1068, 1083 (9th Cir. 2011). The defendant filed a petition for en banc review of this matter and this court granted that request on March 19, 2012.  On March 8, 2013, this Court reversed the district court's order.  *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc).

4

This matter proceeded to a bench trial on June 10, 2014. (CR 126, 128.) Before trial the government moved to dismiss counts 4, 7 and 8 of the indictment, which the district court granted. (PSR ¶ 10.) The district court found the defendant guilty on Counts 1, 2, 3, 5 and 6. (CR 128.)

On September 29, 2014, the district court sentenced the defendant to 30 years in prison on Counts 1 and 2, 20 years on Count 3; 10 years on Count 5, with those sentences to run concurrent to each other but consecutive to a 5 year sentence imposed on Count 6. (CR 151.) This sentence resulted in a total term of imprisonment of 35 years.

The defendant appealed his sentence, which the Ninth Circuit affirmed. *United States v. Cotterman*, 619 F. App'x 654 (9th Cir. 2015).

On June 18, 2020, the defendant filed a pro se motion for reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (2-SER-27-35.) On June 25, 2020, the defendant filed a second pro se Motion to Reduce Sentence or for Early Release pursuant to the First Step Act. (2-SER-36-42.) The court subsequently granted a motion to appoint counsel to represent the defendant. (CR 181, 184.)

The defendant's counsel filed a Supplemental Motion to Reduce Sentence or for Early Release on September 11, 2020. (2-SER-50-73.) The government filed its response in opposition on September 25, 2020. (2-SER-82-107.) The defendant filed his reply on October 15, 2020. (2-SER-108-118.)

The district court entered an order denying the defendant's Supplemental Motion for Compassionate Release on November 2, 2020. (1-SER-2-8.) The defendant filed a pro se Motion for Equitable Relief and Reconsideration of that order on December 23, 2020 (2-SER-123-128), which the district court also denied (1-SER-9-11). This appeal now follows.

## B. <u>Statement of Facts</u>

### 1. <u>Defendant's Child Pornography Offense and Molestation of His Granddaughter</u>

This Court stated the facts of this case as follows:

> Howard Cotterman and his wife were driving home to the United States from a vacation in Mexico on Friday morning, April 6, 2007, when they reached the Lukeville, Arizona, Port of Entry. During primary inspection by a border agent, the Treasury Enforcement Communication System ("TECS") returned a hit for Cotterman. The TECS hit indicated that Cotterman was a sex offender—he had a 1992 conviction for two counts of use of a minor in sexual conduct, two counts of lewd and lascivious conduct upon a child, and three counts of child molestation—and that he was potentially involved in child sex tourism. Because of the hit, Cotterman and his wife were referred to secondary inspection, where they were instructed to exit their vehicle and leave all their belongings in the car. The border agents called the contact person listed in the TECS entry and, following that conversation, believed the hit to reflect Cotterman's involvement "in some type of child pornography." The agents searched the vehicle and retrieved two laptop computers and three digital cameras. Officer Antonio Alvarado inspected the electronic devices and found what appeared to be family and other personal photos, along with several password-protected files.

> Border agents contacted Group Supervisor Craig Brisbine at the Immigration and Customs Enforcement ("ICE") office in Sells, Arizona, and informed him about Cotterman's entry and the fact that

he was a sex offender potentially involved in child sex tourism. The Sells Duty Agent, Mina Riley, also spoke with Officer Alvarado and then contacted the ICE Pacific Field Intelligence Unit, the office listed on the TECS hit, to get more information. That unit informed Riley that the alert was part of Operation Angel Watch, which was aimed at combating child sex tourism by identifying registered sex offenders in California, particularly those who travel frequently outside the United States. She was advised to review any media equipment, such as computers, cameras, or other electronic devices, for potential evidence of child pornography. Riley then spoke again to Alvarado, who told her that he had been able to review some of the photographs on the Cottermans' computers but had encountered password protected files that he was unable to access.

Agents Brisbine and Riley departed Sells for Lukeville at about 1:30 p.m. and decided en route to detain the Cottermans' laptops for forensic examination. Upon their arrival, they gave Cotterman and his wife Miranda warnings and interviewed them separately. The interviews revealed nothing incriminating. During the interview, Cotterman offered to help the agents access his computer. The agents declined the offer out of concern that Cotterman might be able to delete files surreptitiously or that the laptop might be "booby trapped."

The agents allowed the Cottermans to leave the border crossing around 6 p.m., but retained the Cottermans' laptops and a digital camera. Agent Brisbine drove almost 170 miles from Lukeville to the ICE office in Tucson, Arizona, where he delivered both laptops and one of the three digital cameras to ICE Senior Special Agent & Computer Forensic Examiner John Owen. Agent Owen began his examination on Saturday, the following day. He used a forensic program to copy the hard drives of the electronic devices. He determined that the digital camera did not contain any contraband and released the camera that day to the Cottermans, who had traveled to Tucson from Lukeville and planned to stay there a few days. Agent Owen then used forensic software that often must run for several hours to examine copies of the laptop hard drives. He began his personal examination of the laptops on Sunday. That evening, Agent Owen found seventy-five images of child pornography within the unallocated space of Cotterman's laptop.

Agent Owen contacted the Cottermans on Sunday evening and told them he would need Howard Cotterman's assistance to access password-protected files he found on Cotterman's laptop. Cotterman agreed to provide the assistance the following day, but never showed up. When Agent Brisbine called again to request Cotterman's help in accessing the password-protected files, Cotterman responded that the computer had multiple users and that he would need to check with individuals at the company from which he had retired in order to get the passwords. The agents had no further contact with Cotterman, who boarded a flight to Mexico from Tucson the next day, April 9, and then flew onward to Sydney, Australia. On April 11, Agent Owen finally managed to open twenty-three password-protected files on Cotterman's laptop. The files revealed approximately 378 images of child pornography. The vast majority of the images were of the same girl, approximately 7–10 years of age, taken over a two to three-year period. In many of the images, Cotterman was sexually molesting the child. Over the next few months, Agent Owen discovered hundreds more pornographic images, stories, and videos depicting children.

*Cotterman*, 709 F.3d at 957-59. In some of the images and videos, the defendant's fingers are shown spreading the vaginal opening of the child victim. (PSR ¶ 14.) Agent Owen also found approximately 300 text stories that describe acts of child sex abuse. (2-SER-132.) The child victim was identified at the defendant's granddaughter. (PSR ¶16.) She was between 7 and 10 years of age when the defendant sexually abused her. (PSR ¶ 14.)

2.   Trial

A bench trial was held in this case, commencing on June 10, 2014. (CR 126.) Before trial and based on the government's motion, the court dismissed Counts 4, 7 and 8 of the indictment. (PSR ¶ 10.) After trial, the district court found the defendant guilty of Counts 1, 2, 3, 5 and 6. (CR 128.) The advisory sentencing guideline was

life. (PSR ¶ 65.) However, the statutory maximums were not that high. Counts 1 and 2 required a minimum sentence of 15 years and had a maximum sentence of 30 years. 18 U.S.C. § 2251(a) and (e). Count 3 required a minimum sentence of 5 years and had a maximum sentence of 20 years. 18 U.S.C. § 2252(a)(1) and (b)(1). Count 5 allowed for a maximum sentence of 10 years. 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Count 6 allowed for a sentence of up to 5 years imprisonment. 18 U.S.C. § 1462(a).

### 3. Defendant's Prior Convictions

In 1992, the defendant was convicted in California of thirty-three offenses, which included two counts of use of a minor in sexual conduct, two counts of lewd and lascivious conduct upon a child, and three counts of annoy/molest a child. (PSR ¶ 43.) A review of the facts underlying those convictions reveals that the defendant went to several daycare/preschool centers over the course of three days in August 1991 and falsely represented himself to be a doctor or social services inspector investigating acts of child abuse. *Id*. Under those pretenses, he gained access to children. *Id*. He photographed the pubic area of at least two six-year-old girls. *Id*. He had the children take off their clothes and he took pictures of them. *Id*. He also penetrated one child victim's vaginal opening with his finger. *Id*.

### 4. Sentencing

At the sentencing hearing on September 29, 2014, the court permitted the parties to argue their respective positions regarding the defendant's sentence, as well

as the sentencing factors under 18 U.S.C. § 3553(a). (2-SER-140-154.) The defense requested the court sentence the defendant to 15 years. (2-SER-141.) Defense counsel and the defendant argued factors under § 3553(a), including the defendant's advanced age of 74, that the defendant never distributed any child pornography, the defendant provided substantial financial assistance to the victim and her family, the victim was not aware that the defendant was photographing her and her genitalia, and that the defendant had expressed remorse for his actions. (2-SER-163-165.)

The government requested the court consider the history and characteristics of the defendant, his continual rationalization and justification of his offenses, as well as deterrence and the need to protect the public when determining an appropriate sentence. (2-SER-150-154.) The government recommended a sentence of 60 years. (2-SER-151.)

In addition, the child victim and her mother made statements to the court regarding the impact of the defendant's actions on them. (2-SER-155-161.) The child victim asked the district court to sentence the defendant to 60 years in prison. (2-SER-160-161.)

The district court sentenced the defendant to a total of 35 years in prison. (2-SER-161.)

Defendant's Claim for Compassionate Release

On June 18, 2020, the defendant filed a hand-written pro se Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (2-SER-27-35.) On June 25, 2020, the defendant filed a second pro se Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(a)(1)(A)(i).[2] (2-SER-36-49.) The district court appointed counsel for the defendant, who subsequently filed a Supplemental Motion for Compassionate Release. (2-SER-50-73.)

The defendant requested compassionate release claiming that, even absent the COVID-19 pandemic, his case presented extraordinary and compelling reasons for release. (2-SER-37.) The defendant cited his age, the fact that he had already served 12 years of his sentence without incurring any disciplinary write-ups, his health conditions, and the Bureau of Prisons' (BOP) decision to deem him to be a "minimal" risk for recidivism. The defendant argued that he could be more effectively, safely, and efficiently monitored on supervised relief. (2-SER-51.)

The district court denied the defendant's motion in a seven-page written order. The district court found the relevant § 3553(a) factors, specifically the nature and circumstances of the offenses, along with the defendant's prior significant criminal

---

[2] The second motion was nearly identical to his first motion, but was typed, instead of hand-written. (CR 179; SER-36-43.) Defendant noted that his purpose in providing the second document was to "provide a more legible version for the court's review." (CR 179-1, p.1; SER-43.)

history involving a similar offense, did not weigh in favor of a sentencing reduction. (1-SER-2, 5-7.) The district court noted that the defendant fled to Australia to avoid charges and had to be extradited back to the United States, thus indicating he would not follow the law and presented an escape risk. (1-SER-6.) The court also found that the defendant had only served one third of his total sentence and that early release would create a sentencing disparity with similarly situated defendants. (*Id*.) The court stated that the victim had requested a sentence between 60 years to life, and that to release the defendant after he had only served "12 years would be an affront to the victim's sense of justice, and the court's conviction that even a life sentence would be appropriate." (1-SER-7.)

The district court also found that the defendant had not sufficiently demonstrated the requisite extraordinary and compelling circumstances to warrant early release. (1-SER-2, 7-8.) The court found that defendant's documented medical conditions "are being controlled with medication," and that his cataracts do not place him at risk from contracting COVID-19. (1-SER-7.) The court also found that the defendant is "not suffering a serious deterioration in physical or mental health due to the aging process." (1-SER-7.) The court noted insufficient evidence of certain ailments, finding that "his anticipatory ailments are of no consequence to this Court." (1-SER-7.)

# VI.  **SUMMARY OF ARGUMENTS**

A.    The district court acted well within its discretion in denying defendant's motion for compassionate release based on the 3553(a) factors.  The defendant is a sexual offender who preyed on his own granddaughter, molesting her during visits and documenting the abuse in photographs and videos.  The defendant is a repeat sexual offender having committed similar offenses in 1991.  The defendant also fails to show extraordinary and compelling circumstances.  The defendant's does not suffer from a medical condition that absolutely renders him at risk of serious illness if he contracts COVID-19, or even a medical condition that is serious deteriorating his physical condition or affecting his ability to provide self-care.   In fact, the medical records do not support defendant's claim of the existence of many of his ailments.   The defendant's age alone, or fear of contracting COVID-19, is insufficient to warrant compassionate release.  Furthermore, the defendant has now been vaccinated for COVID-19 thus mitigating his risk of contracting, or having serious effects from, the disease.

B.    The district court did not abuse its discretion by denying defendant's motion for reconsideration.  The defendant did not raise any new arguments that could not have been raised previously, nor did he present any newly discovered evidence.  Instead, he requested the court reconsider its ruling without providing clear evidence that the district court had previously erred.

13

C.     The district court did not abuse its discretion by finding that defendant's two pro se motions for compassionate release were moot.     An amended motion supersedes a previously made motion, and it is clear from the pleading that defense counsel's motion was intended to amend and supplement the previously filed motions on the same subject.   The defendant does not point to any arguments raised in his pro se motions that were not addressed by counsel in his supplemental motion. This Court should affirm.

# VII.  ARGUMENTS

## A.  The District Court Did Not Abuse Its Discretion In Denying Defendant's Motion For Compassionate Release.

### 1.  Standard of Review

The district court's decision to deny a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) is reviewed for abuse of discretion. *See United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).  A district court abuses its discretion if its decision is illogical, implausible, or without support in the record, *United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018), or if "it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc).

This Court affords significant deference to district courts in the exercise of their sentencing discretion because "the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (internal quotation marks omitted).  Even if the defendant is eligible for a reduction, the district court is under no obligation to grant it.  18 U.S.C. § 3582(c)(1)(A) (the court "may reduce the term of imprisonment" if the defendant meets certain criteria).

### 2.  Analytical Framework

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824

(2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Section 3582(c)(1)(A)(i) of Title 18 authorizes an exception to that general rule and permits modification of a sentence if "extraordinary and compelling reasons warrant such a reduction . . . and the reduction is consistent with the applicable policy statements issued by the Sentencing Commission." As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary*." United States v. Dean*, No. 3:18-cr-00119-SI, 2020 WL 3073199, at *6 (D. Or. June 10, 2020) ("Compassionate release is 'rare' and 'extraordinary,' and courts routinely deny such claims.")

Congress did not define what constitutes "extraordinary and compelling." Instead, Congress directed the Sentencing Commission to promulgate policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Guidelines' policy statement, U.S.S.G. § 1B1.13, has not been updated since the First Step Act amended § 3582(c)(1)(A) to allow individual defendants to file motions for compassionate release. *See Aruda*, 993 F.3d at 800. Thus this Court has concluded that the policy statement of § 1B1.13 is not binding on the district court in motions filed by a defendant. *Id*. at 802. But,

16

"[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *Id.*

Section 1B1.13 provides that the court may grant release if "extraordinary and compelling reasons" exist "after considering the factors set forth in 18 U.S.S.G § 3553(a), to the extent that they are applicable," and only if the court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13.

The Application Notes for § 1B1.13 describes four categories of "extraordinary and compelling reasons," which are when: 1) the defendant suffers from "a serious physical or mental condition...that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; 2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less"; 3) in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner; or 4) if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances. U.S.S.G. § 1B1.13, comment. (n.1(A)-(D)).

17

When moving for relief under 18 U.S.C. § 3582(c), the defendant bears the burden of demonstrating that a sentence reduction is warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *Walton v. Ariz.*, 497 U.S. 639, 650 (1990), *overruled on other grounds, Ring v. Ariz.*, 536 U.S. 584, 609 (2002) (holding that a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency").

### 3. The District Court Did Not Abuse Its Discretion By Denying Defendant's Motion Based On The § 3553(a) Factors.

A reduction under § 3582(c)(1)(A) is "discretionary, not mandatory, and [can] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). *See also United States v. Mortensen*, 822 F. App'x 634, 634-35 (9th Cir. 2020) (district court did not abuse its discretion in denying motion for compassionate release based on a finding of dangerousness due to the nature and circumstances of the underlying offense.)

The district court did not err in finding that the sentencing factors of 18 U.S.C. § 3553(a) weighed against early release. The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued

18

by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013). The Court "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *United States v. Ebbers*, 432 F.Supp.3d 421, 430 (S.D.N.Y. 2020). When reviewing such a discretionary decision, this Court considers the entire record, including the court's balancing of the § 3553(a) factors at the original sentencing. *See Chavez-Meza v. United States*, 138 S.Ct. 1959, 1966–67 (2018). A district court does not abuse its discretion in denying a sentence reduction as long as "the record as a whole satisfies [the Court] that [it] 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision-making authority.'" *Id.* at 1967 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

### a. Nature and Circumstances of the Offense and History of the Defendant.

The district court found that the nature and circumstances of the instant offense, as well as the defendant's prior criminal history, weighed against a sentence reduction. (1-SER-6.) The court noted that the present offense included sexual misconduct with the defendant's own granddaughter. (1-SER-6.) That conduct included exposing, and touching his granddaughter's genital area, including spreading her vaginal opening, while the child was asleep and in the care of the

defendant. (PSR ¶ 14.) On the defendant's computer, agents found 23 password-protected files that contained 378 images of child pornography, and three videos. (Id.) In addition to videos and pictures depicting his own abuse of his granddaughter, the defendant had files depicting the sexual abuse of many other child victims. (*Id*., 2-SER-152.) The images of his granddaughter were taken on multiple occasions in approximately 2004 to 2006 when the victim was approximately 7 to 10 years of age. (PSR ¶ 14.) The agent also located approximately 300 text stories that described acts of sexual abuse of children. (2-SER-47.)

The court also noted that the defendant has a "significant criminal history engaging in similar offenses." (1-SER-6.) In 1991, the defendant was convicted in Santa Clara County, California, of lewd and lascivious conduct with a child, child molestation, and use of a minor in sexual conduct. (PSR ¶ 43.) Over multiple days, the defendant went to multiple child-care facilities and claimed to be investigating child abuse. In at least one instance, he was granted access to two six-year-olds. The defendant had them removed their clothes and took pictures of them. In one instance, he vaginally penetrated a female child. He was sentenced to serve 4 years in total for these offenses. (*Id*.)

The defendant cites to a number of findings by the court that he claims were erroneous. For instance, the defendant claims the district court erred by stating that the defendant's first sexual conviction occurred in 1991. (Op.Br. at 13.) However,

20

as noted in paragraph 43 of the PSR, the <u>conduct</u> that led to the defendant's 1992 conviction occurred from August 19-23, 1991. The defendant was arrested on October 21, 1991. He was sentenced to serve four years in total on June 19, 1992. (PSR ¶ 43.) While the district court may have erred in stating his conviction occurred in 1991, the district court correctly noted that the defendant's sexual misconduct crimes went back to 1991.

The defendant further claims the district court erred in finding that some of the sexual abuse occurred in the home he shares with his wife. (Op.Br. at 3.) The defendant is incorrect.

At trial, the government admitted Exhibit 8, which was a video found on the defendant's computer inside the password protected files. (2-SER-133; 2-SER-26.) The computer file name was T03078BR1.wmv. (*Id*.) The video depicted the sexual abuse of a minor female, the defendant's granddaughter. In Count One of the Indictment the defendant was alleged to have produced three child pornography videos by employing, using, persuaded, inducing, enticing, and coercing a minor female to engage in sexually explicit conduct. T030078BR1.wmv (Exhibit 8) was one of three videos produced by the defendant identified in that count. (2-SER-13-14.) In the video the agent could see a mirror, cabinet with what appeared to be tiles on the top, oak cabinetry and a light box on top that had oak paneling on it in the background. (2-SER-133.) Agent Owen recognized those items of furniture from

21

the photos of the interior of the defendant' residence.  (*Id*.)  A photo from that same area of the defendant's home showing the same sink between two walls with the tile counter, the oak cabinets, and the oak paneling on the light above the sink was admitted at trial.  (2-SER-135.)  The victim testified that she recognized the room depicted in Exhibit 33-A as the room she stayed in when she visited the defendant in California.  (2-SER-138.)   Exhibit 9, which was also a video depicting child sexual abuse of the defendant's granddaughter, was also found on the defendant's computer in the password protected area.  (2-SER-135.)  Agent Owen identified the chest of drawers in the background of the video that was the same oak chest of drawers he had seen in photos from the defendant's residence. (2-SER-136.)   The district court's concerns that the defendant intended to return to live in a residence where he sexually abused his own granddaughter, which may have occurred with the "possible acquiescence of his wife in his offense" are supported by the record, and are valid concerns.[3]  *See United States v. Fischer*, No. CR-14-0595, 2020 WL 2769986, at *6 (D. Md. May 27, 2020) (questioning defendant's proposal of release to his home, since offense took place there); *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *4 (D. Conn. Apr. 17, 2020) ("[T]he defendant's

---

[3] The district court made this finding in his Order denying defendant's Motion for Reconsideration.  (1-SER-11.)

proposed release plan would place him in the same household with the same adults where and with whom he lived when he committed the offense of conviction . . .").

Without identifying what the errors were, the defendant claims there were errors in the PSR identifying the facts of his 1992 offense. (Op.Br. at 9.) The defendant further claims that the district court erred in relying on the facts as set forth in the PSR. (*Id*.) Again, the defendant is incorrect.

The defendant's reliance on *United States v. Castillo-Marin*, 684 F.3d 914 (9th Cir. 2012) is misplaced. A district court may not rely on the factual description of an offense in a presentence investigation report in order to determine if the prior offense categorically qualifies as a "crime of violence" for purposes of determining whether a sentencing enhancement applies. *Id*. at 920. That is not the case here.

Where, as in this case, the defendant did not file objections to the PSR, the district court was entitled to accept those facts as true and correct. *See United States v. Ameline*, 409 F.3d 1073, 1085 (9th Cir.2005) (en banc) ("[T]he district court may rely on undisputed statements in the PSR at sentencing."); *United States v. Rodriguez*, 921 F.3d 1149, 1157 (9th Cir. 2019) (courts may accept as true any facts in a PSR that the defendant did not object to at the time of sentencing); *United States v. Romero–Rendon*, 220 F.3d 1159, 1163 (9th Cir.2000) (holding a PSR provided "clear and convincing evidence of [the defendant's] previous conviction" when the defendant "never questioned the factual accuracy of the PSR").

Moreover, prior to trial, the defendant entered into a "Stipulation of Facts" with the government. (2-SER-19-25.) This stipulation included admissions to the convictions as set forth in the PSR, as well as the underlying facts surrounding the offense. (2-SER-20.) These admissions included agreeing that:

> "the defendant went to several daycare/preschool centers over the course of three days (August 15, 19, and 20, 1991) and falsely represented himself to be a doctor or an official with the Department of Social Services investigating physical and sexual abuse of children. Under these pretenses, he gained access to eleven victims, nine girls and two boys, all between the ages of three and six years old, and photographed the pubic areas of two six year old females. Upon those convictions the defendant was sentenced to serve four years in prison on June 19, 1992. As a result of those convictions Howard COTTERMAN is a registered sex offender with the state of California.

(2-SER-20.) The district court's finding that the defendant had a "significant criminal history engaging in similar offenses" was supported both by the uncontested facts set forth in the PSR and the defendant's stipulated admission to the facts of the 1992 conviction.

Contrary to the defendant's claim (Op.Br. at 4, 15), the district court correctly noted that the defendant fled to Australia in order to avoid the allegations and had to be extradited back to the United States, indicating that he is an escape risk and unlikely to "follow the law." (1-SER-6.) The defendant quibbles with this finding, claiming that the trip was a previously planned retirement trip and he waived extradition, therefore the district court erred in finding he is an escape risk or that he

would not follow the law. (Op.Br. at 4, 12.) These claims are undermined by the fact that when contacted with a request by the agent that he provide the passwords for the file on the computer, the defendant stated that he would cooperate and agreed to meet the agent the next day. (PSR ¶ 13.) Instead, the very next day, and without informing the agent of any travel plans, he boarded a flight to Hermosillo, Sonora, Mexico. From there, he boarded flights to Canada and Japan, and eventually travelled to Sydney, Australia. (*Id*.) Australian authorities located the defendant five months later. The defendant produced a driver's license under a false name before admitting his true identity. (PSR ¶ 15.) Whether he waived extradition is of no moment. The record clearly supports the district court's finding that the defendant is an escape risk and unlikely to follow the law.

The district did err in stating the defendant was 70 years old, instead of 80. However, this appears to be a typo. The district court was clearly aware that the defendant was over the age of 70 at the time of his 2014 sentencing. The PSR included his date of birth and age. (PSR, p. 2.) In addition, the defense emphasized his age in his sentencing memorandum (2-SER-165), and in his Supplemental Motion for compassionate release (2-SER-55.)

The district court also factually erred in asserting defendant had an additional conviction for commission of a sex felony crime involving a minor by a registered sex offender in 2007. (1-SER-4.) These charges were filed against the defendant in

the Eastern District of California and involved the same victim as in the instant offense. (PSR ¶ 46.) However, those charges were subsequently dismissed without prejudice. (2-SER-166-167.)

A district court can abuse its discretion if it bases its findings on incorrect facts. *Morales*, 108 F.3d at 1035. But in this instance, the error was harmless. *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000) (where court used incorrect standard of proof in applying an enhancement at sentencing, reversal was not required where sufficient evidence supported the enhancement); *see also United States v. Medina*, 524 F.3d 974, 984 (9th Cir. 2008) (harmless error found where district court incorrectly noted the date defendant's motion was filed, as the error did not affect the court's finding of a Speedy Trial Act violation, and the evidence would not support a finding that error would have affected the court's decision to dismiss the indictment without prejudice).

The district court did not rely solely on the 2007 charge in determining that, under the § 3553(a) factors, "the defendant had a significant criminal history engaging in similar offenses." (1-SER-6.) The district court also referenced the defendant's 1992 conviction, which involved taking sexual pictures and sexually touching multiple child victims, was similar to the instant offense and was sufficient to show the defendant engaged in repeated sexual offenses that made him a danger to the community. (1-SER-4.) It is unlikely that the district court's incorrect

notation of the 2007 charge as a conviction would have affected his determination that the nature and circumstances of the offense and the defendant's prior criminal history weighed against his request for early release.

The defendant claims the district court erred by finding that the defendant was a predator (Op.Br. at 4), and before the district court he argued that he is not a danger to the community, citing a lack of disciplinary record, BOP's belief that he is not at risk for recidivism and statistics regarding recidivism trends as defendant's age. (2-SER-51, 66, 69-70.) The defendant ignores that fact that he was 52 years of age when he was convicted of committing multiple sex offenses against minor children in California. (PSR ¶ 43.) The defendant was approximately 63 to 65 years old when he repeatedly molested his granddaughter (PSR ¶ 14), and 66 years old when he was found to be in possession of a laptop computer containing hundreds of images of child pornography, videos of child pornography and 300 text stories detailing stories of child sex abuse. (PSR ¶¶ 12-14.) Clearly, his increasing age does not make him less of a risk to sexually reoffend. The defendant's risk to the community is demonstrated by the record.

The defendant next asserts that the district court erred by not "seriously considering the combination of supervisory and home confinement restriction," and "the kinds of sentences available." (Op.Br. at 10, 15.) The record demonstrates that the district court considered the defendant's arguments and had a reasoned basis for

his decision. The court noted the medical ailments claimed by the defendant, as well as the defendant's claims of other mitigating factors such as his age, health conditions, time served, and good behavior while incarcerated. (1-SER-2.) The court outlined the defendant's release plan, and noted the defendant claimed not to be a danger to society and that BOP had assessed him as having a low risk for recidivism as recidivism decrease with age. (1-SER-3.) Clearly the district court fully considered the defendant's arguments.

The defendant asserts that district court's decision to deny his motion was substantively unreasonable, as the court placed undue emphasis on what he did, as opposed to who he is. (Op.Br. at 11.) The defendant further argues that without a new psychological evaluation, there is no proof that he is a sexual predator. (Op.Br.at 4-5.) The defendant would ask this Court to ignore his criminal history in its entirety. But who the defendant is is demonstrated by the crimes he committed. That is, he is a repeat sexual offender who molested multiple children, including his own grandchild, who created and produced child pornography by documenting his molestation of that grandchild in pictures and video, who possessed 378 images of child pornography and videos, as well as graphic stories describing acts of child sexual abuse on his computers, who fled to another country to avoid arrest, and who had the means, and ability, to obtain false identification, and did so. That the defendant would like to believe he is not a sexually motivated predator is irrelevant

and is belied by his criminal record. A trial court's "choice between two permissible views of the weight of evidence is not 'clearly erroneous'" where the evidence "would support a conclusion either way." *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949).

### b. Sentencing Considerations

The district court also noted its responsibility to consider the purposes of sentencing the need to avoid sentencing disparity. (1-SER-6.) The defendant was only sentenced to serve 35 years, despite the fact that the advisory guideline range was lifetime incarceration.[4] He has served a little more than 1/3 of his 35-year sentence. (1-SER-6.)

The defendant argues that his early release would prevent sentencing disparity as it would be in accord with the number of defendants being released. (Op.Br. at 16.) However, many district courts have denied release in child pornography and other sex offense cases involving child victims, even when the defendant did not have any prior criminal history. *See e.g.*, *United States v. Mortensen*, No. 2:11-CR-00095-JAD-CWH, 2020 WL 2549970, at *2 (D. Nev. May 19, 2020) (70-year-old defendant collected and traded child pornography, and attempted to solicit teenagers online; "The predatory nature of this conduct by a man (then) in his late fifties cannot

---

[4] While the statutory maximums for each count were less than life (see PSR, p. 1.), the district court was authorized to impose the maximum sentence for each count and to run them consecutively for a total of 95 years. (PSR pp. 14-15.)

be overlooked and suggests that he remains a danger to the community—particularly its teenage girls."); *United States v. Lebrecht*, 1:16-cr-00166-EAW, 2020 WL 2519721 (W.D.N.Y. May 18, 2020) (inmate denied release when he had no risk factors, and posed danger based on child pornography offenses and lack of sex offender treatment); *United States v. Miezin*, 456 F.Supp.3d 911 (N.D. Ohio Apr. 27, 2020) (54-year-old with hypertension and borderline diabetes denied release as a danger to the community based on child exploitation offenses, particularly because these crimes may be committed at home, which would require close monitoring, and that would expose others to the risk of COVID-19); *United States v. Ackerman*, No. CR 11-740-KSM-1, 2020 WL 5017618, at *8–10 (E.D. Pa. Aug. 25, 2020) (release of 59-year-old inmate based on hypertension and other ailments not warranted; even if those conditions were extraordinary, he had served only half of a 210-month term for possession and trading of child pornography, seeking out minors online and exploiting them, and attempting to meet an adolescent male); *United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *4 (D. Neb. May 26, 2020) (release denied 4.5 years into 17-year sentence for child pornography offenses, as defendant is a "recidivist sex offender who…had previously been convicted of sexually assaulting a 17-year-old and contributing to the delinquency of a 16-year-old he had also been having sex with"); and *United States v. Van Dyke*, 2:15-CR-0025-JLQ-1, 2020 WL 1811346, at *2 (E.D. Wash. Apr. 8, 2020), *adhered to on*

*reconsideration*, 2020 WL 1845553 (E.D. Wash. Apr. 10, 2020) (release denied notwithstanding severe chronic illnesses because he likely would not comply with sex offender treatment).

The district court did not err in finding that early release would "undermine the steep punishment provided to sex offenders and would create a sentencing disparity for similarly situated defendants." (1-SER-6.) This finding was supported by the record.

### c. Victim Considerations

Finally, the district court correctly noted that victim considerations weighed against early release. At the original sentencing hearing, the victim requested that the defendant be sentenced to serve 60 years in prison, and asserted that "15 years, the amount of time [Cotterman] is asking to serve, is insulting." (2-SER-160.) The court was correct in noting that releasing the defendant after he had only served 12 years would be an affront to the victim's sense of justice. (1-SER-7.) The district court denied relief to the defendant, not just because extraordinary and compelling reasons did not exist, but also because the § 3553(a) factors weighed against his release. As the "record as a whole" demonstrates that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision-making authority[,]" the district court did not abuse its discretion in

31

denying the defendant's motion. *Chavez-Meza*, 138 S.Ct. at 1967 (quoting *Rita*, 551 U.S. at 356).

> 3. <u>The defendant fails to show extraordinary and compelling circumstances justifying early release</u>

The district court also properly denied defendant's motion for compassionate release because he did not establish "extraordinary and compelling reasons" for release. The record supports the district court's ruling.

> a. <u>COVID-19 Factors</u>

In his motion for compassionate release, the defendant cited more to general concerns regarding COVID-19, as opposed to any specific ailments he suffered from that made him more susceptible to severe illness if he contracted COVID-19.[5] But the existence of the COVID-19 pandemic by itself does not create an extraordinary or compelling circumstance requiring early release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v.*

---

[5] The defendant asserted that "[e]ven absent the COVID-19 pandemic, [his] case presents compelling circumstances for release," and then included as a factor that the defendant suffered from certain ailments that made him "vulnerable to respiratory ailments, that are especially salient during the current pandemic." (2-SER-51.)

*Eberhart*, 448 F.Supp.3d 1086, 1090 (N.Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13."). Indeed, accepting such a claim would result in the release of the entire federal prison population, which would be inconsistent with 18 U.S.C. § 3582(c)(1)(A)'s pronouncement that compassionate release is an "extraordinary" remedy. *See United States v. Ramirez*, 459 F. Supp.3d 333, 338 (D. Mass. 2020) ("Allowing any inmate under threat of the coronavirus to receive compassionate release would untether a judge's discretion from the policy guidelines because it would transform an extraordinary remedy into an ordinary one.").

The record also demonstrates that the district court considered the defendant's asserted extraordinary and compelling circumstances. (1-SER-2-3, 7-8.) The court did not abuse its discretion in concluding that these alleged factors did not justify relief, especially when considered in light of the § 3553(a) factors.

Moreover, since the defendant filed his notice of appeal, the defendant has been vaccinated, which mitigates his risk from contracting COVID-19.[6] The defendant received a 2-shot regime of the Moderna vaccine. While vaccines are not one hundred percent effective, the CDC has stated that "[a]ll COVID-19 vaccines

---

[6] Documentation of the vaccination is available is requested by the Court.

33

currently available in the United States have been shown to be safe and effective at preventing COVID-19." *Benefits of Getting a COVID-19 Vaccine*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited May 4, 2021 ). Furthermore, vaccines are particularly effective at preventing "severe illness and death." *When You've Been Fully Vaccinated, What We Know*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited May 4, 2021).

While the defendant is not one hundred percent protected from COVID-19, he now has significant protection from against serious illness or death should he contract COVID-19.  In addition, FCI Sheridan currently reports no inmates with COVID-19. https://www.bop.gov/coronavirus/ (last visited May 17, 2021).

  b. <u>Defendant's diagnosed medical conditions do not demonstrate extraordinary and compelling circumstances.</u>

The district court found the defendant was not "suffering a serious deterioration in physical or mental health due to the aging process[,]" that his diagnosed medical conditions were being controlled by medication, and that the defendant had not shown that FCI Sheridan "is unable to handle COVID-19."  (1-SER-7.)  Finally, the district court also found that the defendant claimed to suffer from certain medical conditions that were not supported in the records. [7]  (Id.)

---

[7] The defendant claims to have Parkinson's, diverticulitis, prostrate hypertrophy, and possible colon cancer.  (Op.Br. at 6.)  However, his medical records

34

The defendant provided 30 pages of his prison medical records as exhibits to his motion before the district court. (3-SER-190-232, 240.) The records provided support for medical diagnoses of hypothyroidism, unspecified 12/01/14, hyperlipidemia (high cholesterol), mixed, 12/01/14, myopia, 08/13/15, hypertension (high blood pressure), benign essential, 12/04/14, seborrheic keratosis, 12/02/15 and unspecified cataract, 11/08/19. (3-SER-204.) None of those conditions are life threatening and there is no indication the defendant is experiencing deteriorating physical or mental health due to the aging process.

The defendant is not terminally ill, his diagnosed medical ailments (hypertension, high cholesterol, hyperthyroidism, and chest pains) are manageable, and they do not present any impediment to the defendant's ability to function as an

---

do not reflect a diagnosis for any of these ailments. (3-SER-190-208.) The defendant claims that he has had tremors for two years, and that the difficulty swallowing occurs daily, but the medical reports indicate he first reported the tremors on July 9, 2020, after he filed his initial pro se motion for compassionate release. (3-SER-200.) In addition, the defendant refused a colonoscopy that would have confirmed or eliminated the presence of cancer. (3-SER-207.) He attached colonoscopy images from July 13, 2011, to his reply, but there is no explanation of the impression those images had on the viewer. (3-SER-240.) They do not support his claim that he has been diagnosed with diverticulitis. At his July 9, 2020, visit, the defendant also reported chest pain. (3-SER-200.) However, an EKG taken that same day was "unremarkable." (3-SER-200.) The defendant presents no evidence to counter the court's finding. Instead, citing fundamental unfairness, he claims the district court ignored evidence that his medical records are not complete. (Op.Br. at 9.) But defendant has the burden to produce proof of extraordinary and compelling circumstances. He has not produced any evidentiary challenge necessary to establish clear error. *See e.g. United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000).

inmate with BOP. There is no indication in the medical records that his conditions are escalating. Despite the many afflictions the defendant identifies (some diagnosed by medical professionals and some not), he does not state, much less provide evidence that his conditions/impairments prevent him from providing self-care within FCI Sheridan. In fact, he has conceded he has the ability to provide self-care. (2-SER-109, 121.)

Moreover, the records do not support a claim that the defendant is suffering a "serious deterioration in physical or mental health because of the aging process." U.S.S.G. 1B1.13, cmt. Note 1(B). His argument that his hypothyroidism is rapidly deteriorating due to an increased need for medication is not reflected in the provided medical records. (Op.Br. at 6.) In fact, the defendant concedes his claim of deterioration is based a decrease in his TSH level, which he tracks, and that he consults with a pharmacist for "cardio and pulmonary disorder workarounds." (Op.Br. at 13; 2-SER-121.) This is insufficient to demonstrate a serious deterioration in his physical health.

Finally, the defendant argues that the fact that medication is managing his conditions is not an exception to the requirements of § 1B1.13. (Op.Br. at 14.) The defendant is incorrect. "In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 1:16-CR-00130-DAD, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020).

36

The district court's finding that defendant failed to show "extraordinary and compelling" circumstances was supported by the record and was neither illogical nor implausible. The records amply supported a finding that BOP is successfully managing his healthcare, and that neither his age, medical conditions, rehabilitative efforts, or current imprisonment meet the "extraordinary and compelling" standard.

### c. The Defendant Does Not Demonstrate Sentencing Disparity.

The defendant rejects the district court's arguments that disparity would occur if defendant is released early instead arguing that disparity did in fact occur because the district court denied his motion. In support of his claim, the defendant argues that extraordinary and compelling circumstances are present where the original sentencing court imposed a harsh sentence. (Op.Br. at 14.)

District courts have found extraordinary and compelling circumstances where changes in the law or guidelines since his original date of sentencing would mandate a much lower sentence if he were sentenced today. *See United States v. Lii*, No. CR-06-143 JMS, 2021 WL 1113663, *5-8 (D.Ct. Hawaii, March 23, 2021) (the severity of a pre-First Step Act sentence which made significant changes to the mandatory minimums, combined with the enormous disparity between the sentence imposed and the sentence the defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A); *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (emphasis added); *see also*

*United States v. Ledezma-Rodriguez*, 472 F.Supp.3d 498, 504 (S.D. Iowa, July 14, 2020) ("Several courts, including this one, have concluded that drastic sentencing disparities created by sentencing law reforms can be an extraordinary and compelling reason supporting release.") (collecting cases); However, that is not the case here. Neither the sentencing guidelines, nor the statutory minimums and maximums, for the defendant's offenses have been reduced since the district court imposed its 35-year sentence and the defendant would still face sentencing guidelines of life if he were sentenced today.

The defendant's reliance on the sentencing statistics for child pornography offenses released after the date of his sentencing also do not support a claim of sentencing disparity. Disparity exists when judges impose different sentences on two offenders with identical criminal histories who are convicted of the same crimes, when judges impose identical sentences on two offenders whose prior records and crimes are very different or when the sentence depends on the judge who imposes it or the jurisdiction in which it is imposed. Citing the mean and median sentences for production of child pornography does not demonstrate a sentencing disparity with another defendant who is similarly situated. *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) (finding that consulting the sentencing statistics is generally not necessary because there is "no assurance of comparability"); see *United States v. Treadwell*, 593 F.3d 990, 1012 (9th Cir. 2010) (trying to establish disparity by

38

comparing other defendants' sentences is not helpful because "[t]oo many factors dictate the exercise of sound sentencing discretion in a particular case"), *overruled on other grounds, United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020). The defendant does not point to any individual person, who had the same criminal history, and who committed similar crimes, who received a lesser sentence.

The defendant's reliance on *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), also does not support his claim that harsh sentence demonstrates sentencing disparity which constitutes extraordinary and compelling circumstances. (Op.Br. at 14.) *Jenkins* was not a compassionate release case. Instead, *Jenkins* involved the direct appeal contesting the reasonableness of his sentence. *Jenkins*, 854 F.3d at 184. Citing the same sentencing statistics as the defendant, the Second Circuit found the defendant's sentence of 225 months, which was 165 months above the statutory minimum and 15 months below the statutory maximum, was shockingly high. *Id*. at 188-89, 193-194. However, unlike the defendant, Jenkins had no prior criminal history, he owned a collection of child pornography believed to be for personal viewing as there was no evidence he distributed or attempted to distribute the pornography and he did not attempt to contact a minor, must less actually seduce, rape or photograph a child. *Id*. at 184. Jenkins, however, was subject to same enhancement as one who actually seduced, raped, and photographed a child. *Id*. at 189. The Court noted the importance in distinguishing between sentences of those

who produced or distributed child pornography or those who abused children. *Id*. at 190. The Court found sentences of 30 and 60 years were not shocking where the perpetrators actually engaged in sexual contact with multiple young victims and engaged in production of child pornography. *Id*. at 190-91.

Unlike the defendant in *Jenkins*, the defendant actually contacted, groomed, and sexually abused a child. He videoed and photographed this abuse. Furthermore, the defendant had a prior case involving multiple felony convictions for committing similar acts against children in multiple day cares. He is clearly not similarly situated to the defendant in *Jenkins*. An objective evaluation of the seriousness of the offense and his prior criminal record demonstrates that his original sentence was not excessive. In fact, this Court already evaluated his sentence and found it to be reasonable. *Cotterman*, 619 F. App'x at 655 ("In light of the troubling nature of the offense, as well as Cotterman's criminal history, the court did not abuse its discretion" by imposing a 35-year sentence).

The defendant also claims disparity because prior to trial the government offered him a plea offer of 12 to 20 years, and the district court imposed a sentence much higher than that. (Op.Br. at 16.) The defendant ignores a number of things. First, the prosecution was not obliged to recommend a sentence in accordance with an original plea agreement rejected by the defendant. Second, even if the defendant had accepted the original plea offer of 12 to 20 years, the district court is not bound

by that agreement and must still exercise its independent obligation to exercise its discretion and fashion a sentence in accordance with the sentencing factors set forth in 18 U.S.C. § 3553(a).  It cannot be presumed that the Court would have accepted the plea agreement.  "Rule 11 vests district courts with broad discretion to accept or reject plea agreements." *United States v. Gonzales*, 502 F. App'x 665, 667 (9th Cir. 2012).   The district court imposed a 35-year sentence after hearing all of the facts in this case and considering the § 3553(a) factors.  This Court has already held that the district court did not procedurally err in its imposition of sentence and that the sentence was reasonable.  *Cotterman*, 619 F. App'x at 655.  Sentencing disparity simply does not occur when the court sentences a defendant to a term of imprisonment above the original plea offer.  *See United States v. Gonzalez-Casteneda*, 332 F. App'x 431, 432 (9th Cir. 2009) ( defendant's disparity contention lacked merit where defendant was not similarly situated to defendants who received lower sentences for the same conduct "because he rejected the plea offer").

## B. The District Court Did Not Abuse Its Discretion By Denying Defendant's Motion For Reconsideration, His Request For An Evidentiary Hearing , Or His Request For A Psychological Evaluation.

### 1. Standard of Review

The district court's denial of a motion to reconsider is reviewed for an abuse of discretion.  *United States v. Mark*, 795 F.3d 1102, 1104 (9th Cir. 2015).   A district court's decision on whether to conduct an evidentiary hearing is generally

41

reviewed for an abuse of discretion. *See United States v. Mercado-Moreno*, 869 F.3d 942, 955 (9th Cir. 2017) (district court's broad discretion in adjudicating motions under § 3582(c) includes whether to hold an evidentiary hearing). *See also Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008).

This Court does not appear to have addressed the standard of review for the denial of a defendant's request for a psychological examination outside the context of a motion for competency evaluation pursuant to 18 U.S.C. § 4241, et seq. *See United States v. George*, 85 F.3d 1433, 1447 (9th Cir. 1996) (a court's decision to order a psychiatric examination pursuant to 18 U.S.C. § 4241 is reviewed for an abuse of discretion). Other circuits have reviewed the district court's decision to grant or deny or request for a psychological examination for other purposes for an abuse of discretion. *See*, *e.g.*, *United States v. Limberopoulos*, 26 F.3d 245, 254 (1st Cir. 1994); *United States v. Nickels*, 324 F.3d 1250, (11th Cir. 2003).

2. Background

Following the district court's denial of his motion for compassionate release, the defendant filed a pro se motion for equitable relief and for reconsideration of compassionate release. (2-SER-123-128.) The defendant claimed that "several substantive factual disputes, errors, omissions, and newly discovered or previously unavailable evidence have come to light." (2-SER-123.) The defendant also, for the first time, requested a psychological evaluation and an evidentiary hearing. (*Id*.)

As noted by the district court, the defendant claimed as newly discovered evidence:

> (1) that he was not aware of a conviction in the Eastern District of California; (2) that a Northern District of California probation officer approved of his release to his wife and son; (3) that he has expressed remorse to family members; (4) that his granddaughter thinks he is not "a danger to the community" and she erroneously asserted he should serve his full sentence; and (5) that it is not necessary for him to establish a diagnosed condition to be considered for release. (*Id.*) Furthermore, the defendant claims he has suffered "character assassination." (*Id.* at 2.) He believes he cannot successfully refute the attack on his character for fear of being characterized as minimizing his behavior. (*Id.*) For example, he cannot argue his 1991 conviction for lewd and lascivious conduct with a child, child molestation, and use of a minor in sexual conduct was shown not to have been sexually motivated for fear of it being construed as minimization. (*Id.*)

(1-SER-10.)

The district court denied the defendant's motion for reconsideration finding that the defendant failed to "present any newly discovered evidence that could not have been discovered for utilization in his original motion." (1-SER-11.) The district court further found that the defendant's contentions did not undermine the district court's conclusions that the defendant had not established extraordinary or compelling circumstances warranting relief and that the § 3553(a) factors weighed against release. (*Id.*) The court also found that a psychological evaluation and evidentiary hearing as to the reasons why he committed the underlying offenses unnecessary. (*Id.*)

43

3. <u>Argument</u>

    a. <u>The District Court Did Not Err In Denying The Defendant's Motion For Reconsideration</u>

The district court did not abuse its discretion in determining that the defendant failed to establish appropriate grounds for reconsideration. A motion for reconsideration should not be granted, absent highly unusual circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). That is, unless the district court is presented with newly discovered evidence, there is an intervening change in the controlling law or if it is established that the court's prior ruling was clearly erroneous or resulted in manifest injustice. *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004). Moreover, "[a] motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)

The district court clearly identified and applied this legal standard, and properly found that the arguments raised in the defendant's motion for reconsideration did not justify reconsideration of its prior decision. This determination was logical and had support in the record. It was not an abuse of discretion. "No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding. Rather, the

44

district court's authority to revisit a ruling . . . 'is within its sound judicial discretion.'" *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013) (quoting *United States v. Raddatz*, 447 U.S. 667, 678 n. 6, (1980)).

The district court did not err in finding that that the defendant had not presented any newly discovered evidence that could not have been discovered for utilization in his original motion. In fact, the defendant did not present <u>any</u> newly discovered evidence. Instead, the defendant relied upon his own assertions regarding statements he believed his granddaughter to have made regarding his dangerousness, and her state of mind when she stated she wished for the defendant to serve the remainder of his sentence. The same is true regarding his claims that a probation officer visited his home and (allegedly) approved his release conditions. Claims that his 1992 conviction was not predicated upon sexual motivations had already been presented to the district court (2-SER-111; 3-SER-243-260), but were undermined by the defendant's repeat of the same type of offense - this time involving his minor granddaughter as a victim - less than 10 years after his release from prison, as well as his extensive collection of child pornography and sexually explicit stories describing child sex abuse.[8]

---

[8] The defendant did claim "that there is no ED CA conviction of which I'm aware," and corrected the court as to his age. (CR 210, p. ; SER - .) Claims that he was unaware of any conviction in E.D. of CA are not the same as presenting evidence to demonstrate the district court clearly erred. Moreover, as argued above, given that the defendant was convicted in 1992 of thirty-three counts involving the sexual

Moreover, each argument urged in his motion for reconsideration could have been raised in his original motion. The defendant presented no additional evidence of an extraordinary and compelling circumstances that would satisfy the conditions of 18 U.S.C. § 3582(c)(1)(A).

Claims that the district court ignored instances of alleged prosecutorial misconduct in denying his motion for reconsideration are not supported by the record as prosecutorial misconduct did not occur. The defendant first asserts that the prosecutor hid from the court that the victim told her he was not a danger to either her or the community. (Op.Br. at 7.) Additionally, the defendant claims that any statement by the victim that he was not deserving of an early release were made "under the false impression that he would be freed with just 7 years left to serve" and that she was not told he would be subject to strict supervision. (Op.Br. at 8.)

---

abuse of multiple children at multiple day cares, it is unlikely the court's error in misconstruing the 2007 charges as a conviction would have affected the district court's ruling on the original motion. The distinction in the defendant's age would also appear to have irrelevant to the district court's decision to deny defendant's motion; first, because the court was aware the defendant was over the age of 70; and second, because one of the four examples of extraordinary and compelling circumstances include a minimum age of 65, in combination with a serious deterioration in physical or mental health and having served a minimum amount of time as a consideration. U.S.S.G. § 1B1.13, cmt n. 1(B). Given the nature of the offense and the defendant's prior criminal history for committing a similar offense involving multiple victims, these errors would not have resulted in manifest injustice.

Any claims that the victim opined as to his lack of dangerousness are pure speculation and without any foundational or evidentiary support. The same is true of the defendant's claims that the victim was not fully advised of the circumstances surrounding his sentence and conditions of release. The defendant was not present for any such conversations and concedes he does not have contact with his granddaughter. (Op.Br. at 5.) He presents no evidence to support this claim. There is absolutely zero evidence that the prosecutor withheld information from the court or misled the victim.

Moreover, these claims were irrelevant to the determination of whether the defendant should be released under § 3582(c)(1)(A) and did not undermine the district court's ruling on the defendant's motion. The district court's reference to the victim's preferences came from her statements made at the sentencing hearing, and not from any government pleading in response to defendant's motions for compassionate release. Moreover, the defendant's multiple and repeated offenses involving sexual assaults on children, documenting that abuse in photographs, thus producing child pornography, as well as his possession of child pornography, more than supported the district court's finding that the defendant's release was not warranted.

The defendant also asserts that the prosecutor engaged in exaggerations and falsehoods. (Op.Br. at 8.) First, he asserts that the prosecutor incorrectly stated that

release would prevent treatment. (*Id*.) This statement was, in fact, correct. The defendant has not yet engaged in any BOP rehabilitative treatment for sexual offenders, nor has he been psychologically evaluated by BOP, which he has previously conceded. (2-SER-126.) Further, BOP does not evaluate inmates convicted of sex offenses to determine if they are a sexually dangerous person subject to civil commitment pursuant to the Adam Walsh Act of 2006, codified at 18 U.S.C. § 4248, until they are between 18 and 24 months of their projected release date. See Bureau of Prisons Program Statement 5394.01, Certification and Civil Commitment of Sexually Dangerous Persons, p. 6, available at https://www.bop.gov/policy/progstat/5324_010.pdf. Early release would prevent this evaluation and treatment.

The defendant next claims that the prosecutor engaged in misconduct by overstating he had been a predator most of his adult life, and misled the court as to the reasons why he had the laptop containing child pornography with him when he was on vacation, thus leading the court to his conclusion that the defendant had an "uncommon disregard for the law." (Op. Br.at p. 8, 13.) Each of these statements, however, were supported by the record. The defendant's criminal record relating to child sexual abuse dates back to October of 1991 – 29 years ago. (PSR ¶ 43.) His molestation of the victim in the instant case is believed to have occurred between 2004 to 2006, and he was arrested in 2007 with a large amount of child pornography

on his computer, including videos and photos he took documenting the molestation. (PSR ¶¶ 12-14.) This is a significant chunk of his adult life.

Furthermore, the laptop computer contained numerous images of child pornography in password protected files, including a collage of a series of photos depicting the victim's genitalia that he created to memorialize his sexual abuse of her. (2-SER-137.) The government properly contended that the presence of the laptop while on a vacation trip, combined with the fact that he created and kept those images on both his home computer and laptop, demonstrated their importance to him. This was not a misstatement of the evidence.

The defendant's claims that these are part of a pattern of misconduct are not supported by the record. The prosecutor's statements were proper inferences based on the record. The defendant's claims fail.

The defendant's motion for reconsideration merely reiterated claims that he is remorseful, not a danger to the community and that he has presented extraordinary and compelling circumstances justifying release. He did not present any new evidence, identify a change in controlling law or identify any clear error. The district court's denial of the reconsideration motion was reasonable and thus a proper exercise of discretion.

b.   <u>The District Court Did Not Err In Denying The Defendant An</u>
     <u>Evidentiary Hearing or Psychological Evaluation</u>

Generally, a defendant has no general right to an evidentiary hearing, and no case has held otherwise in the context of motions for compassionate release. See Fed. R. Crim. P. 43(b)(4); *see also United States v. Lipsey*, No. CR-07-01208-1-PHX-GMS, 2021 WL 1597899 at * 1 (D. Ariz. April 23, 2021) (request for an evidentiary hearing denied because the issue was fully briefed and an evidentiary hearing would not assist the court).

In *Dillon*, the Supreme Court held that sentence-reduction proceedings under § 3582(c) have a "limited scope and purpose" that "are not constitutionally compelled." *Dillon*, 560 U.S. at 828. When, as here, a defendant brings a motion under § 3582(c), Rule 43(b)(4) of the Federal Rules of Criminal Procedure excludes the normal requirement that the defendant be present for a "sentencing" because it "excludes from that requirement proceedings that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c).'" *Id*. at 828 (quoting Rule 43(b)(4)). It follows that an evidentiary hearing is not required on his motion, especially where the statute does not require one and, as in this case, a hearing would not have assisted the court in deciding the motion.

The same is true of the defendant's request for a psychological examination. Pursuant to 18 U.S.C. § 3552(c), a district court "may" order a psychological examination of a defendant if it "desires more information than is otherwise

available to it as a basis for determining the mental condition of the defendant." However, it does not require the court to order a psychological evaluation.

The defendant did not request an evidentiary hearing or a psychological evaluation until he filed his Motion for Reconsideration. (2-SER-123.) As noted by the district court in his Order denying that motion, neither a psychological evaluation nor an evidentiary hearing as to the reasons why the defendant committed his offenses would have changed the district court's analysis that the defendant failed to meet his burden to establish extraordinary or compelling circumstances warranting relief, and the § 3553(a) factors weigh against release. (1-SER-11.) Why the defendant committed the offenses, and his dubious remorse, "does not undermine the harm he has caused." (*Id*.) A psychological examination would have added little or nothing of value already known to the court. Thus, the district court did not abuse his discretion in denying the belated requests for evidentiary hearing and a psychological evaluation.

The record below consists of extensive briefing and references to evidence presented both before and during trial, and at sentencing. The judge who decided the Motion for Compassionate Release is the same judge who presided over the defendant's criminal case since its inception and heard all of the trial evidence. The record was more than sufficient to support the district court's findings that relief was not warranted. The defendant provides no authority showing otherwise. *See United*

*States v. Gonzalez*, 819 F. App'x 283, 285 n.3 (5th Cir. Sept. 4, 2020) (noting an evidentiary hearing is not required on § 3582(c)(2) motions for a reduction of sentence).

### C. The District Court Did Not Err By Finding Defendant's Pro Se Motions For Compassionate Release Were Moot.

#### 1. Standard of Review

This Court reviews for clear error factual findings about mootness, and de novo legal conclusions. *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014). (DC)

#### 2. Argument

Without citing any authority, the defendant asserts the district court erred in declaring his pro se motions for compassionate release moot. (Op.Br. at 10-12.) This argument has no merit.

The district court did not err by treating the defendant's pro se motions as moot. Where an amended motion is filed, it "supersedes the original motion." *United States v. Barreras*, CV 14-1030-PHX-DGC(BSB), CR 13-1655-PHX-DGC-1, 2014 WL 2135943, *2 (D. Ariz. May 22, 2014) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) and *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990)); *cf. Vega v. Nunez*, CV 13-09530-VBF-E, 2014 WL 1873265, *8 n.2 (C.D. Cal. May 8, 2014) ("An amended complaint supersedes the original, .....") (citing *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir.

2012) (en banc)). After an amended motion is filed, a court does not err in treating the original motion as non-existent. *Barreras*, 2014 WL 2135942 at \*1 (citing *Ferdik*, 963 F.2d at 1262); *see also Harris v. Haynes*, No. 3:19-CV-05698BHSJRC, 2020 WL 4808656, at \*2 (W.D. Wash. July 16, 2020), *report and recommendation adopted*, No. 3:19-CV-05698-BHS, 2020 WL 4787989 (W.D. Wash. Aug. 18, 2020) (where defendant filed two motions to dismiss, with one entitled as an "amended motion to dismiss" the amended motion superseded the original motion in all respects and rendered the original motion moot).

The defendant filed two pro se Motions for Compassionate Release. The first was handwritten; the second was typed and was almost identical to the hand-written motion. Subsequently, the district court appointed counsel to represent the defendant and assist him with his motions. (CR 184.)

The defendant's attorney filed his Supplemental Motion For Compassionate Release on September 11, 2020. (2-SER-50.) Counsel stated that the defendant's motion was incorporated by reference throughout and stated that he was submitting the "attached motion *amending* and supplementing his earlier pro se motion for compassionate release." (2-SER-50.) (emphasis added.) A side-by-side review of the defendant's pro se motions and the one filed by his attorney demonstrate that the factual and legal arguments raised are virtually the same. The defendant does not identify any arguments raised in his pro se motions that were not addressed by his

attorney in the supplemental motion.    The district court did not err in finding the

defendant's pro se motions were moot.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court affirm the district court's denial of the defendant's request for a sentence reduction for compassionate release.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief


s/ *Shelley K.G. Clemens*

SHELLEY K.G. CLEMENS
Assistant U.S. Attorney

## IX.  <u>STATEMENT OF RELATED CASES</u>

To the knowledge of counsel, there are no related cases currently pending in this Court.

RLM/geq

## X.   <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS (Form 8)</u>

**9th Cir. Case Number(s):**  20-10371 & 21-10040

I am the attorney or self-represented party.

**This brief contains <u>12,863</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Shelley K.G. Clemens*     **Date**: <u>May 26, 2021</u>